**FILED**

July 19, 2021
**EDYTHE NASH GAISER,** CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**vs.)   No. 20-0290** (BOR Appeal No. 2054610)
                    (Claim No. 2018016155)

**CONNIE TITUS,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Murray American Energy, Inc., by Counsel Aimee M. Stern, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Connie Titus, by Counsel Robert L. Stultz, filed a timely response.

The issues on appeal are medical benefits and temporary total disability. The claims administrator denied a request for a second opinion for a neurology evaluation on August 10, 2018. On March 15, 2019, the claims administrator denied a request for physical therapy and a right hip corticosteroid injection. The claims administrator closed the claim for temporary total disability benefits on April 22, 2019. On May 7, 2019, the claims administrator denied a request for left shoulder physical therapy. The Workers' Compensation Office of Judges ("Office of Judges") reversed the decisions in its September 6, 2019, Order, granted the requested medical benefits, and ordered that the claim remain open for temporary total disability benefits. The Order was affirmed by the Board of Review on April 14, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

1

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]

. . . .

(d) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo re-weighing of the evidentiary record. . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r*, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Off. Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Ms. Titus, a coal miner, was injured on January 12, 2018, when the bus she was driving in a coal mine struck another bus. She was transported to Wheeling Hospital Emergency Room where she reported pain in her right thigh, knee, and hip. A left shoulder x-ray showed no acute findings. A CT scan of the cervical spine showed multilevel disc narrowing and spurring but no acute injury. She was diagnosed with right hip, right knee, and acute lumbar sprains. The Employees' and Physicians' Report of Injury was completed that day and indicates Ms. Titus was injured when she was struck head on by a bus. The diagnoses were right hip strain, right knee sprain, lower back strain, unspecified head injury, and left shoulder pain.

A treatment note by Ross Tennant, FNP, indicates Ms. Titus reported on January 15, 2018, that at the time of her injury, she struck her head and right hip. She stated that she had significant pain in her lower back and right hip, extending to her right leg and foot. Ms. Titus had no left shoulder pain. Mr. Tennant diagnosed closed head injury, lumbar strain, and right hip contusion. On January 22, 2018, Ms. Titus reported pain in her mid and lower back, a burning sensation in her right thigh, and numbness in her right toes. Ms. Titus's right hip pain had improved. The claim was held compensable for low back strain, right hip strain, and right knee sprain on January 26, 2018. Ms. Titus returned to Mr. Tennant on January 29, 2018, and reported lower back and right hip pain. She was diagnosed with closed head injury, lumbar strain, right hip contusion, cervical thoracic sprain, and left shoulder sprain. Physical therapy was recommended for the cervical and left shoulder sprains.

A February 2, 2018, right hip MRI showed no definite findings. The labrum was poorly evaluated but it was noted that the findings could indicate a labral injury. On February 3, 2018,

2

Ronald Fadel, M.D., performed a record review in which he opined that cervicalgia should be added to the claim. He found that Ms. Titus struck her head at the time of her injury and reported head/neck pain when she sought treatment. Dr. Fadel found no neurological injury. Ms. Titus sought treatment at Hudson Premier Physical Therapy on February 5, 2018, for cervical and left shoulder sprains caused by a work-related accident. Ms. Titus reported that she did not have cervical or left shoulder problems prior to the injury. The claim was held compensable for cervical ligament sprain and left shoulder joint sprain on February 26, 2018.

David Soulsby, M.D., performed an independent medical evaluation on March 6, 2018, in which he noted that Ms. Titus complained of pain in her chest, right hip, and lower back. Dr. Soulsby diagnosed lumbar sprain, mild to moderate lumbar degenerative disc disease, cervical sprain, and left shoulder sprain and found that Ms. Titus had not reached maximum medical improvement. He recommended a left shoulder MRI and opined that Ms. Titus's pain likely resulted from any injury to the soft tissues at the upper end of her mastectomy scar. Dr. Soulsby opined that Ms. Titus sustained soft tissue cervical and low back sprains and that the right hip contusion was consistent with bursitis.

A March 23, 2018, left shoulder MRI showed degenerative changes but no evidence of acute injury or internal derangement. In a treatment note, Jeffrey Abbott, M.D., indicated Ms. Titus was seen for right hip and left shoulder injuries on April 3, 2018. Dr. Abbott diagnosed right hip labrum tear, radiculopathy, neck pain, and acute left shoulder pain. Ms. Titus had positive left shoulder impingement sign. On April 29, 2018, Ms. Titus underwent a cervical MRI which showed narrowing of the C5-6 foramina, which could affect the C5 and C6 nerve roots. There was no spinal canal stenosis. A right hip MRI was performed the following day and showed findings consistent with a posterior labrum tear extending to the posterior superior labrum.

On May 4, 2018, Dr. Abbott noted that he reviewed the left shoulder, cervical, and hip MRIs. He diagnosed right acetabular labrum tear, cervical intervertebral disc herniation without myelopathy, and cervical neural foraminal stenosis. He requested physical therapy and a neurosurgical consultation. The claims administrator granted a request for a neurosurgical consultation on May 10, 2018.

Ms. Titus sought treatment from Robert Marsh, M.D., on June 11, 2018. He noted that Ms. Titus was treated for neck pain, bilateral arm pain, tingling, and numbness. She also experienced pain radiating into her right shoulder and forearm. Dr. Marsh diagnosed cervical spondylosis and radiculopathy. On August 11, 2018, he noted that a cervical MRI showed mild, age appropriate degenerative changes that were not advanced enough for surgery. Dr. Marsh opined that Ms. Titus likely had a tear of the cervical or trapezius muscle. He stated that the condition can be difficult to treat and had a long healing period. He recommended an epidural steroid injection.

Dr. Soulsby performed an independent medical evaluation on July 31, 2018, in which he diagnosed right hip labrum tear, acute lumbar sprain/strain, mild to moderate lumbar degenerative disc disease, acute cervical sprain/strain, cervical degenerative disc disease, and left shoulder sprain. Dr. Soulsby found that Ms. Titus had reached maximum medical improvement for her cervical spine, lumbar spine, and left shoulder. However, Ms. Titus had not reached maximum

3

medical improvement for the right hip. Dr. Soulsby opined that the MRI arthrogram showed a labrum tear. He recommended surgical repair. The claims administrator denied a request for a second opinion for a neurology evaluation on August 10, 2018.

Ms. Titus returned to Dr. Schweizer on September 7, 2018, for pain in her right hip, left shoulder, neck, and low back. She also reported cervical and lumbar radiculopathy. The claims administrator added right hip strain to the claim on September 21, 2018. On September 25, 2018, Dr. Schweizer performed a right hip arthroscopy. Ms. Titus was seen for follow-up on October 8, 2018. Dr. Schweizer stated that she was to continue physical therapy. Ms. Titus was also to undergo an MRI and x-rays of the left shoulder due to a lack of progress with conservative treatment and therapy. The left shoulder MRI was performed on October 23, 2018, and showed subacromial subdeltoid bursitis, acromioclavicular joint degeneration, mild glenohumeral joint degeneration with diffuse labral degeneration, and minor rotator cuff tendinopathy with partial tearing at the supraspinatus and infraspinatus tendon joint.

On October 26, 2018, Hikmat El-Kadi, M.D., and Eric Donovan, PA-C requested referral to physical therapy for evaluation and treatment of cervical pain and cervical disc bulging at C5-6 and C6-7. It was noted that Ms. Titus was seen for a neurosurgical evaluation for a work-related injury. Dr. El-Kadi opined that surgery was not indicated in this case. He opined that Ms. Titus needed an epidural steroid injection for neck pain and headache, referral to pain management, and physical therapy.

Ms. Titus returned to Dr. Schweizer on November 5, 2018. He reviewed the left shoulder MRI and stated that it showed tendinopathy and a small partial thickness tear of the rotator cuff. He opined that the MRI also showed a small defect along the pectoralis, likely indicating the muscle was peeled back. He stated that this indicates the condition was the result of the work-related injury. He diagnosed left shoulder pain of unspecified chronicity and subacromial impingement. The claims administrator authorized a request for a physical therapy consultation on November 26, 2018.

On January 2, 2019, Dr. Schweizer diagnosed left shoulder subacromial impingement, superior labrum anterior to posterior (SLAP) tear, biceps tendonitis, and acromioclavicular joint arthritis. Dr. Schweizer requested authorization of left shoulder subacromial impingement and SLAP tear as well as an arm sling. The claims administrator denied the request for authorization of left shoulder arthroscopy and an arm sling on January 8, 2019.

Dr. Soulsby performed an Independent Medical Evaluation on January 22, 2019, in which he found that Ms. Titus had reached maximum medical improvement. He found that no additional treatment was necessary for the cervical spine, lumbar spine, or left shoulder. Dr. Soulsby opined, however, that Ms. Titus should continue physical therapy for an additional four to six weeks to strengthen her right hip.

Dr. Schweizer completed a Diagnosis Update on January 23, 2019, requesting that left shoulder SLAP tear, left shoulder pain, left subacromial impingement, left shoulder biceps tendonitis, and left acromioclavicular degenerative joint disease be added to the claim. On January

4

29, 2019, Dr. Schweizer performed left shoulder surgery. The post-operative diagnoses were shoulder pain of unspecified chronicity, subacromial impingement, SLAP tear, biceps tendonitis, acromioclavicular joint arthritis, mild rotator cuff partial thickness tear, and subacromial bursitis.

The claims administrator denied the addition of superior glenoid labrum lesion, shoulder pain, left shoulder bicipital tendinitis and left shoulder impingement syndrome to the claim on February 4, 2019. In a separate decision that day, the claims administrator also denied the addition of left shoulder osteoarthritis to the claim.

In a February 22, 2019, Record Review, Dr. Soulsby stated that he reviewed additional records, including a left shoulder MRI and Dr. Schweizer's reports. Dr. Soulsby noted that he examined Ms. Titus three times and concluded that the evidence does not indicate Ms. Titus sustained a work-related acute disc injury. He stated that the radiographic findings were degenerative and commonly seen in people Ms. Titus's age. Dr. Soulsby opined that Ms. Titus's continued pain was not the result of her work injury. He also opined that the left shoulder SLAP tear was not the result of the compensable injury because the first post-injury MRI did not show a rotator cuff tear or labrum injury. Dr. Soulsby stated that impingement is usually degenerative. Dr. Soulsby also opined that Ms. Titus did not develop left shoulder biceps tendinitis or acromioclavicular degenerative joint disease as a result of the compensable injury. Dr. Soulsby concluded that physical therapy was reasonable for the right hip and that acute cervical strain and left shoulder strain should be added to the claim. The claims administrator added cervical sprain and left shoulder joint sprain to the claim on February 26, 2019.

Dr. Schweizer completed a Work Capabilities Form on March 6, 2019, indicating Ms. Titus's status remained the same. The diagnosis was listed as right hip sprain and the plan was to continue physical therapy and injections. His progress notes that day stated that Ms. Titus's hip pain was unimproved. He opined that she likely suffered a labral tear in addition to the strain.

In a March 8, 2019, Independent Medical Evaluation, Dr. Soulsby noted that Ms. Titus reported no changes in her symptoms and no new treatment. Dr. Soulsby found that Ms. Titus had reached maximum medical improvement and recommended no additional treatment for the cervical spine, lumbar spine, or left shoulder. Regarding the left hip, Dr. Soulsby opined that if weakness continued, physical therapy with a strengthening exercise program should be considered.

On March 14, 2019, the claims administrator stated that the claim would be closed in thirty days unless additional evidence was received indicating Ms. Titus remained temporarily and totally disabled. The claims administrator denied a request for physical therapy and a right hip corticosteroid injection on March 15, 2019.

In a March 29, 2019, Order, the Office of Judges reversed claims administrator decisions and added right hip labral tear to the claim, authorized a left shoulder evaluation, and authorized a left shoulder MRI. Physical therapy and injections of the left shoulder were authorized. Physical therapy for the cervical spine and referral to a pain clinic were also authorized.

On March 29, 2019, the claims administrator added right hip sprain to the claim and denied authorization of an evaluation by Dr. Schweizer, a left shoulder MRI, a referral to a pain clinic, a physical therapy consultation, physical therapy, injections, authorization of a left shoulder arthroscopy, and an arm sling. The Office of Judges added right hip labral tear to the claim and authorized the requested medical benefits on March 29, 2019. The decision was affirmed by the Board of Review on October 18, 2019, and by this Court on March 19, 2021.[1]

In an April 3, 2019, treatment note, Dr. Schweizer stated that Ms. Titus's left shoulder and right hip continued to improve. She was to continue range of motion exercises. The claims administrator closed the claim for temporary total disability benefits on April 22, 2019. On May 1, 2019, Ms. Titus continued to improve and was cleared for light-duty work. Dr. Schweizer completed a Work Capabilities Form stating that Ms. Titus could perform light-duty work with no overhead lifting. She was to continue physical therapy and injections. The claims administrator denied a request for physical therapy for a left shoulder superior labrum tear on May 7, 2019.

On May 31, 2019, the Office of Judges reversed a February 4, 2019, claims administrator's decision and added left shoulder superior glenoid labrum lesion, bicipital tendonitis and impingement syndrome to the claim. Primary osteoarthritis, cervical disc displacement, cervicalgia, left shoulder pain, anesthesia of skin, and paresthesia of the skin were denied. The decision was appealed to the Board of Review.

In its September 6, 2019, Order, the Office of Judges reversed the August 10, 2018; March 15, 2019; April 22, 2019; and May 7, 2019, claims administrator decisions; granted the requests for a second opinion for a neurology evaluation, physical therapy and a right hip corticosteroid injection, and physical therapy for a left shoulder superior labrum tear; and ordered that the claim remain open for temporary total disability benefits. Regarding a second opinion for a neurology evaluation, the Office of Judges determined that such treatment was reasonable. As noted in the March 29, 2019, Office of Judges Order, Ms. Titus sustained a traumatic injury and was diagnosed with cervical strain within a few weeks of her injury. She was also diagnosed with shoulder pain and several physicians discussed the connection between the neck and shoulder issues. The Office of Judges found that the cervical spine was not added to the claim until February 26, 2019, causing a significant delay in treatment. Dr. Fadel opined in three different Record Reviews that Ms. Titus's cervical spine should be added to the claim and that he would recommend physical therapy and pain management. The Office of Judges concluded that the complex nature of the case indicates a second neurosurgical consultation should be approved.

Regarding physical therapy and injections for the right hip, the Office of Judges determined that such treatment should also be authorized. The Office of Judges noted that Ms. Titus sustained a right hip labral tear as a result of the compensable injury, and she underwent surgery performed by Dr. Schweizer. Dr. Schweizer administered a right hip injection to treat a right hip strain. The claims administrator's denial of the requested treatment was based on Dr. Soulsby's independent medical evaluation in which he opined that Ms. Titus had reached maximum medical

---

[1]*See Murray American Energy, Inc., v. Connie Titus*, No. 19-1067, 2021 WL 1054477 (W. Va. Mar. 19, 2021) (memorandum decision).

6

improvement. However, the Office of Judges found that Dr. Soulsby also stated in the report that Ms. Titus still had right hip weakness and required physical therapy. Given Ms. Titus's ongoing symptoms and her treating surgeon's opinion that a right hip injection and physical therapy are necessary treatment, the Office of Judges determined that the requested treatment should be authorized.

The Office of Judges also determined that the request for left shoulder physical therapy should be granted. The Office of Judges noted that the request was initially denied because the condition for which the therapy was requested, left shoulder superior labrum tear, was not compensable. However, on May 31, 2019, the Office of Judges modified a claims administrator decision and added left shoulder superior glenoid labrum lesion, bicipital tendinitis, and impingement syndrome to the claim. On August 9, 2019, the Office of Judges reversed a claims administrator decision and authorized left shoulder surgery. The Office of Judges determined in the instant case that physical therapy, as requested by Ms. Titus's surgeon, was appropriate, necessary treatment.

Finally, the Office of Judges ordered that the claim remain open for temporary total disability benefits. The claims administrator's closure of the claim was based on Dr. Soulsby's March 8, 2019, Independent Medical Evaluation, in which he found that Ms. Titus had reached maximum medical improvement. However, Dr. Soulsby noted that she was still in physical therapy for her left shoulder. Further, he opined that additional right hip physical therapy was necessary. The Office of Judges found that Dr. Schweizer did not clear Ms. Titus to return to work until May 1, 2019, but that release was conditional upon the employer's ability to provide light-duty work. The record is unclear whether the employer was able to accommodate the restrictions. The Office of Judges therefore concluded that Ms. Titus was temporarily and totally disabled until at least May 1, 2019, and possibly after if the employer could or would not accommodate her restrictions. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on April 14, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-1(a) workers' compensation benefits shall be provided to those employees who have received personal injuries in the course of and as a result of their covered employment. Ms. Titus has shown by a preponderance of the evidence that a second neurology evaluation, right hip physical therapy, a right hip corticosteroid injection, and left shoulder physical therapy are all necessary treatment for compensable injuries. Pursuant to West Virginia Code § 23-4-7a, temporary total disability benefits will cease when the claimant has reached maximum medical improvement, has been released to return to work, or has returned to work, whichever occurs first. Though Dr. Soulsby found Ms. Titus to be at maximum medical improvement, the Office of Judges, and by extension the Board of Review, was correct to find that his opinion was less reliable than that of the treating physician. Ms. Titus remained temporarily and totally disabled until at least May 1, 2019.

7

Affirmed.

**ISSUED: July 19, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

8